# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 24-1779V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |
| LILY McNULTY *and* CONOR McNULTY, *on behalf of their minor child, J.M.*, | |
| Petitioners, | Special Master Jennifer A. Shah |
| v. | Filed: December 31, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for Petitioners.
*Rachelle Bishop*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]**

On October 30, 2024, Lily and Conor McNulty ("Petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"), alleging that J.M., their minor child, developed Guillain-Barré syndrome ("GBS") as a result of the measles, mumps, and rubella ("MMR"), Hepatitis A, and Varicella vaccinations he received February 17, 2023. ECF No. 1 ("Pet.") at 1.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

After filing the petition, Petitioners filed statements from Ms. McNulty and Mr. Jacob Strumwasser, medical records, medical literature, and a letter from a treating physician, Christopher R. Spiekerman, D.O., opining on causation. Exs. 1-24.

On December 28, 2024, Petitioners filed an application for interim attorneys' fees and costs, requesting a total of $30,674.05, comprised of $26,157.00 for attorneys' fees and $4,517.05 for attorneys' costs. ECF No. 12 ("Fees App.") at 21; Fees App., Ex. A at 9. Petitioners noted that their counsel, Mr. Andrew D. Downing, "has had the honor of being vetted for a Presidential appointment within the U.S. Health and Human Services" and would no longer be able to continue representing them in the Vaccine Program. Fees App. at 3. This is Petitioner's first motion for interim fees and costs. Petitioner has not incurred any personal costs. Fees App. at 1.

Respondent filed a response on January 10, 2025, deferring to me as to whether Petitioners have met the legal standard for an award of interim attorneys' fees and costs. ECF No. 14 ("Fees Resp.") at 2. Respondent noted, however, that Petitioners had not "filed any reliable and objective support for their claim." *Id*. at n.1. Petitioner did not file a reply brief.

Petitioners was initially represented by Mr. Andrew D. Downing. On February 6 and 7, 2025, Mrs. Nancy Meyers filed motions to substitute as counsel for Petitioners. ECF Nos. 16-17. On March 18, 2025, Mr. Richard Gage filed a motion to substitute as counsel for Petitioners. ECF No. 18.

Petitioners then filed additional medical records and a statement of completion. Exs. 25-29; ECF No. 27. This case was activated on September 8, 2025, and reassigned to me on September 9, 2025. ECF Nos. 28-29. On September 9, 2025, I issued an initial order. ECF No. 30. Currently, Respondent has until January 12, 2026, to file a status report identifying any missing records and indicating how he would like to proceed. *See* Non-PDF Order Granting Motion for Extension of Time dated 11/12/2025.

I hereby **GRANT IN PART** Petitioners' application and award a total of **$30,150.91** in interim attorneys' fees and costs.

## I.     Legal Standard

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of

litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just the financial involvement of a petitioner; it also takes into account the expenditures of counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioners had an honest belief that their claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just Petitioners' belief in their claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's

3

vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis . . . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.     Discussion

### A.  Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008). Although this case is in its early stages and has been pending for just over a year, under the circumstances, interim fees are warranted. Petitioners' fees request is on behalf of their former counsel, Mr. Downing, who has wound down his Vaccine Program practice after receiving a Presidential appointment. Fees App. at 3. Other special masters have granted Mr. Downing fees

4

under these circumstances. *See Newey v. Sec'y of Health & Hum. Servs.*, No. 22-494V, 2025 WL 463256, at *2 (Fed. Cl. Spec. Mstr. Jan. 16, 2025); *see also Lucas v. Sec'y of Health & Hum. Servs.*, No. 19-1525V, 2025 WL 1158901, at *2 (Fed. Cl. Spec. Mstr. Mar. 25, 2025); *Fiorello v. Sec'y of Health & Hum. Servs.,* No. 17-1869V, 2025 WL 785004, at *1 (Fed. Cl. Spec. Mstr. Feb. 11, 2025). Moreover, Mr. Downing filed statements from Ms. McNulty and Mr. Strumwasser, medical records, medical literature, and a letter from Dr. Spiekerman opining on causation. *See* Exs. 1-24. I find that, under the circumstances, Petitioners would suffer undue hardship without an award of interim fees and costs.

### B. Good Faith and Reasonable Basis

Although Respondent argued that Petitioners have not filed any reliable and objective support for their claim, he has not raised any specific objection to Petitioners' good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 2; n.1. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. Based on the materials filed by Petitioners thus far, I find that they have maintained a reasonable basis for their claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award interim fees and costs as described below.

### C. Attorneys' Fees

Petitioners request a total of $30,674.05 in attorneys' fees for Downing, Allison & Jorgenson, LLC ("Downing, Allison & Jorgenson"). Fees App. at 21. Petitioners bear the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

1. <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2025 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

Petitioners request compensation for Mr. Downing at a rate of $485.00 per hour for work performed in 2024. Fees App. at 24. Petitioners request compensation for Ms. Ann Allison, counsel, at a rate of $435.00 per hour for work performed in 2024. *Id*. Petitioners request compensation for Ms. Courtney Jorgenson, counsel, at a rate of $375.00 per hour for work performed in 2024. *Id*.

Petitioners also request compensation for paralegal work. Fees App. at 24. Petitioners request compensation for Ms. Danielle Avery, Mr. Alex Malvick, and Ms. Samantha Perez, paralegals, at a rate of $175.00 per hour for work performed in 2024. *Id*.

The requested 2024 rates for Mr. Downing, Ms. Allison, and Ms. Jorgenson are consistent with what they have previously been awarded and are in accordance with the Office of Special Masters' Fee Schedule. *See Lizalde v. Sec'y of Health & Hum. Servs.*, No. 21-1791V, 2025 WL 2223405, at *4 (Fed. Cl. Spec. Mstr. July 8, 2025); *Coons v. Sec'y of Health & Hum. Servs.*, No. 20-1067V, 2025 WL 1011347, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2025). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

Additionally, I find the requested paralegal rates are reasonable, based on the Office of Special Masters' Fee Schedule and what Mr. Downing's staff have previously been awarded. *See Martin v. Sec'y of Health & Hum. Servs.*, No. 22-384V, 2025 WL 996725 (Fed. Cl. Spec. Mstr. Feb. 27, 2025); *Lizalde*, 2025 WL 2223405, at *4.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum.*

*Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See*, *e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be largely reasonable; however, a minor reduction is necessary due to paralegal time billed for administrative and clerical tasks and excessive paralegal time billed for review of filings. Most of these entries bill between 0.2 and 0.3 hours for receiving and reviewing filing notifications. *See* Fees App., Ex. A. Some entries also constitute block billing, where non-compensable administrative tasks are indistinguishably billed together with compensable tasks. *Id.* Examples include (but are not limited to):

- October 31, 2024: 0.3 hours billed by Ms. Perez to "*Receive and review Court's ECF notification* re: filed Petition; *receive and review Court's Notice* re: ECF, Order Directing appearance and Notice of Assignment to Special Master; brief memo to file re: same."

- December 2, 2024: 0.3 hours billed by Ms. Perez to "Finalize and file Motion for Extension of Time; *receive and review Court's ECF notification*; memo to file re: completion."

- December 23, 2024: 1.4 hours billed by Ms. Perez to "Initial drafting work re Motion for Interim Fees and Expenses; to ADD for final drafting; compile interim invoice with expenses and exhibits and ensure no duplicative entries; finalize and file Motion; *receive and review Court's ECF Notification*; memo to file re completeness."

*Id.* (emphases added). These issues have previously been raised with Mr. Downing and his colleagues. *See Coons*, 2025 WL 1011347 at *3 (reducing fees by $1,000.00 for excessive billing for paralegal time); *Pearce v. Sec'y of Health & Hum. Servs.*, No. 22-1362V, 2025 WL 2306298, at *3-6 (Fed. Cl. Spec. Mstr. July 15, 2025) (reducing fees by 5% for billing for non-compensable administrative tasks, block billing, excessive billing, and duplicative billing). Because it is impossible to determine how much time was expended to each individual task in such entries, I will apply a 2% deduction from the requested attorneys' fees. This results in a deduction of $523.14.

Accordingly, Petitioners are awarded attorneys' fees in the amount of **$25,633.86**.[4]

### D. Reasonable Costs

Petitioners request a total of $4,517.05 for attorneys' costs, consisting of $330.59 for medical record requests; $1.46 for postage; $405.00 for the petition filing fee; and $3,780.00 for a letter from Dr. Spiekerman. Fees App., Ex. A at 9.

Petitioners provided documentation for the costs associated with the medical record requests, postage costs, and filing expenses. Fees App., Ex. A at 10-38. I find the costs for these items to be reasonable and award them in full. I discuss Petitioners' expert costs below.

   1. Petitioners' Expert Costs for Christopher R. Spiekerman, D.O.

Petitioners request $3,780.00 for a letter from Dr. Spiekerman opining on causation. Fees App. at 24-25; Fees App., Ex. A at 39-40; *see* Ex. 24. Dr. Spiekerman billed 10.8 hours at $350.00 per hour. Fees App. at 25; Fees App., Ex. A at 40. Dr. Spiekerman has not been awarded an expert rate.

Dr. Spiekerman's nine-page letter provides a timeline of J.M.'s medical history, discusses "[k]ey [f]acts" and "[b]iological [j]ustifications," and opines on causation. *See* Ex. 24. His invoice indicates that he reviewed J.M.'s medical history, records, and lab data, met with counsel, and researched and reviewed medical literature. Fees App., Ex. A at 40. He also cross-referenced medical literature data with his interpretation and fact-checked the data. *Id*. I find that Dr. Spiekerman's hourly rate and the number of hours billed are reasonable.[5] I will therefore award his expert costs in full.

I award Petitioners a total of **$4,517.05** in attorneys' costs.[6]

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT IN PART** Petitioners' application. Petitioners are awarded interim attorneys' fees and costs in the total amount of **$30,150.91** as follows:

---

[4] This total reflects Petitioners' $26,157.00 request for attorneys' fees minus the $523.14 reduction for paralegal billings. ($26,157.00 - $523.14 = 25,633.86).

[5] I decline to set Dr. Spiekerman's expert rate at this time. I am merely determining that the overall hours and amount requested in this motion are reasonable.

[6] Petitioners are awarded $330.59 for medical record requests; $1.46 for postage; $405.00 for the petition filing fee; and $3,780.00 for Dr. Spiekerman's work; totaling $4,517.05.

- A lump sum in the amount of **$30,150.91**, representing reimbursement of Petitioners' interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioners' former counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.